[Civil No. 2415.  Filed July 8, 1926.]

[248 Pac. 32.]

## G. M. WILLARD, Appellant, v. WAYNE HUBBS, as Auditor of the State of Arizona, Appellee.

1. STATUTES — LEGISLATURE PRIOR TO 1914 MIGHT PASS ANY ACT, THOUGH IT ALTERED, AMENDED OR REPEALED INITIATED OR REFERRED MEASURE (CONST., ART. 4, § 1, SUBDS. 6, 14).—Under Constitution, article 4, section 1, subdivision 6, which, prior to its amendment ·in 1914, prohibited veto of initiated or referred measures, and subdivision 14, providing that such section should not deprive legislature of right to enact any measure, legislature might pass any act within its powers, though it altered, amended or repealed any initiated or referred measure.

2. STATUTES—SECTION OF PENAL CODE SUPERSEDING INITIATED MEASURE ENACTED PRIOR TO CONSTITUTIONAL AMENDMENT PROHIBITING LEGISLATURE FROM REPEALING OR AMENDING INITIATED OR REFERRED MEASURES MAY BE AMENDED OR REPEALED BY LEGISLATURE (PEN. CODE 1913, § 678; LAWS SP. SESS. 1912, CHAP. 82; CONST. AMEND., ART. 4, § 1, SUBD. 6).—Penal Code of 1913, section 678, superseding initiated measure, Special Session Laws of 1912, chapter 82, having been enacted prior to amendment of Constitution, article 4, section 1, subdivision 6, in 1914, prohibiting legislature from repealing or amending initiated or referred measures, may be modified, amended or repealed at will of legislature.

3. STATUTES.—Amended sections 654, 670, Penal Code of 1913, deriving their authority from referendum vote of people in 1916, cannot be repealed or amended by legislature, in view of Constitution, article 4, section 1, subdivision 6, as amended in 1914.

---

1. Power of legislature to repeal or amend initiated or referred measures, see notes in 50 L. R. A. (N. S.) 208; L. R. A. 1917B 24. See 25 R. C. L. 910.

4. STATUTES.—If two statutes are in conflict, the later one governs.

5. STATES.—Financial Code of 1922, sections 5, 7, *held* to repeal all continuing appropriations not expressly approved therein.

6. STATES—EXPENDITURES OF STATE GAME-WARDEN HELD GOVERNED BY FINANCIAL CODE AND GENERAL APPROPRIATION BILL, AND NOT BY PROVISION OF PENAL CODE CREATING GAME PROTECTION FUND (FINANCIAL CODE 1922 [LAWS SP. SESS. 1922, CHAP. 35]; GENERAL APPROPRIATION BILL 1923 [LAWS 1923, CHAP. 77]; PEN. CODE 1913, § 678).— Expenditures of state game-warden *held* controlled by Financial Code of 1922, continuing existence of game protection fund provided for in Penal Code of 1913, section 678, and general appropriation bill of 1923, making specific appropriations therefrom, and not by section 678.

See (1) 36 **Cyc.**, p. 942, n. 21.   (2) 36 **Cyc.**, p. 942, n. 21.   (3) 36 **Cyc.**, p. 942, n. 21.   (4) 36 **Cyc.**, p. 1147, n. 25.   (5) 36 **Cyc.**, p. 894, n. 29.   (6) 36 **Cyc.**, p. 891, n. 8.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Messrs. Baker & Whitney, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Frank J. Duffy and Mr. Earl Anderson, Assistant Attorneys General, for Appellee.

LOCKWOOD, J.—This action was brought by G. M. Willard, hereinafter called appellant, against Wayne Hubbs, as auditor of the state of Arizona, hereinafter called appellee, for a writ of *mandamus* to compel the appellee, as auditor, to audit and allow a duly verified claim against the state game protection fund under the provisions of chapter 82 of the Special Session Laws of 1912, and to draw a warrant

4. Rule that last of two irreconcilable statutory provisions will be given effect, see notes in 6 **Ann. Cas.** 860; 19 **Ann. Cas.** 149. See, also, 25 **R. C. L.** 1063.

on the state treasurer, payable from that fund and under that law, for the sum of $2.40. The trial court rendered judgment holding that appellant was not entitled to the writ as prayed for, and the alternative writ theretofore issued was quashed. From this judgment appellant has brought the case to us for review.

The issue is solely one of law and involves the proper construction of section 678 of the Penal Code of 1913, as affected by chapter 82 of the Special Session of 1912, chapter 35, Session Laws of 1922, commonly known as the "Financial Code," and the general appropriation bill of 1923 (Laws 1923, c. 77). In order that we may properly construe these various statutes, it will be necessary to review briefly the enactment of chapter 82 and section 678, *supra*. In 1912 the first state legislature, in special session, passed chapter 82, entitled:

"An act to regulate and license the hunting of game birds and animals; to provide revenue therefrom; to preserve game; and to make appropriation for the purpose of carrying out the provisions of this act."

This act was referred to the people, and was approved on the fifth day of November, 1912; the proclamation of the Governor declaring it in force being dated December 5th of that year. At that time the only limitation upon the enactment, amendment, or repeal of initiated or referred measures was found in subdivision 6, section 1, article 4, of the Constitution, which then read as follows:

"6. The veto power of the Governor shall not extend to initiative or referendum measures approved by a majority of the qualified electors."

And subdivision 14 of the same section further provided:

"14. This section shall not be construed to deprive the Legislature of the right to enact any measures."

The legislature, therefore, had the right to pass any act otherwise within its powers, notwithstanding that such act might either directly or in effect alter, amend or repeal an initiated or referred measure, and in the third special session of the first legislature, this power was exercised in regard to chapter 82, *supra,* after its approval by the people at the referendum of 1912.

During this time a revision of both the Civil and Penal Codes of the state of Arizona was in progress. The act of 1912 above referred to, together with the amendments of the third special session, was, in part, placed in the Penal Code as title 18, part 1, of said code. When so inserted, however, it did not follow the referred measure exactly; some sections of the latter being omitted and some altered, while some new ones were added. Among those included was section 29 of the act, which was in the Penal Code given section number 678, and which reads as follows:

"678. All moneys sent to the state treasurer in payment of hunting licenses, permits, certificates, fines, penalties, or forfeitures, shall be set aside by him, and shall constitute a fund to be known as the game protection fund, for the payment of the printing, publishing of reports, postage, express, and other necessary and office expenses, the salary of the state game warden, and the per diem salaries and necessary expenses of deputies; for the purchase, transportation, distribution, and propagation of game and fish.

"The state game warden shall not issue any voucher, nor shall the state auditor approve any such voucher issued by the state game warden under the provisions of this title, or otherwise, for any services or expenses of any kind, unless the money to pay such voucher shall at the time be on hand to pay the same."

The Penal Code was then enacted by the legislature as a whole, being entitled ''An act to establish a penal code.'' It was vetoed by the Governor, passed over his veto, and became a law on the first day of October, 1913, and chapter 82, *supra,* was necessarily superseded by the enactment of the Penal Code, at least so far as section 29 thereof is concerned.

In 1914 subdivision 6, section 1, article 4, of the Constitution (see Laws 1915, ''Amendments,'' p. 2), quoted above was amended to read as follows:

''6. The veto power of the Governor, or the power of the Legislature, to repeal or amend, shall not extend to initiative or referendum measures approved by a majority vote of the qualified electors.''

In 1916 an initiated measure amending sections 654 and 670 of the Penal Code (see Laws 1917, ''Initiative and Referendum Measures,'' pp. 5, 6), which were part of title XVIII, and which had also appeared in the referred act of 1912, was duly approved by the voters, and became a law on December 8th of that year.

The first question, therefore, for our consideration, is whether or not, under these circumstances, the legislature had the power to amend section 678, *supra,* after the adoption of the constitutional amendment above referred to. It is, of course, true that after such adoption no measure approved by a referendum could be repealed or amended by the legislature; but is section 678 of the Penal Code such a one? We are of the opinion that it is not. The act of 1912 derived its authority from the vote of the people on November 5th of that year, and, had such act remained in force until December 8th, 1914, there is no question it could not have been changed by the legislature. Up to the latter date, however, there was no inhibition placed by the Constitution on the power of

the legislature over a referred measure approved by the people. It was subject to amendment or repeal in the same manner as any other statute, and the legislature, in 1913, adopted the Penal Code as a complete act. Each and every section contained in that Penal Code at the time of its adoption derived its authority from the act of the legislature, and from such act only. The mere fact that some particular section contained therein might also be found in a previous statute, whether passed by the legislature or by the people, no more made it dependent for its authority on such previous passage than the fact it might have been copied from some provision of the California Code made it dependent upon such Code for its authority as law. Such being the case, paragraph 678 of the Penal Code, unlike the amended paragraphs 654 and 670, which derive their authority from the referendum vote of the people in 1916, and which, therefore, cannot be repealed or amended by the legislature, depends solely upon the legislative enactment of the Penal Code, and like any other provision of that Code, not based upon an initiative or referendum, may be modified, amended, or repealed at will by the legislature.

It is, of course, axiomatic that, if two statutes are in conflict in any of their provisions, the later one governs. Reading the Financial Code of 1922, we think there can be no doubt the legislature intended to repeal and did repeal all continuing appropriations not expressly approved therein. It is true certain separate funds were continued in existence, among such being the state game protection fund, mentioned in paragraph 678. But section 5 of the Financial Code provides:

"No money belonging to, or for the use of the state, shall be expended or applied for any state

agency, except as appropriated, unless otherwise herein authorized.''

And section 7 of the same says:

''The authorization of the employment of person or persons and the performance of sundry duties and things and the payment of salaries, wages, compensation, costs and expenses, of whatsoever kind, relating to the activity of any state agency, provided, directed or authorized by the provisions of any of the titles, chapters, paragraphs or sections thereof of the Revised Statutes of Arizona, 1913, Civil Code and Penal Code, and by any amendment or amendments thereto, or by any law of the state of Arizona, shall not be construed as an appropriation of any sum or sums of money for such purposes, and the same shall be paid only upon the authority of the proper officer, and out of the general fund and the appropriation for the proper department, institution or office, authorized in the general appropriation bill.''

It therefore (section 678, *supra*) did authorize the payment of claims like that in question from the state game protection fund, and limited only by the amount in that fund, the later provisions of the Financial Code limited such payments to the amount allowed by the general appropriation bill, and payable from the general fund, unless expressly charged to another fund.

The legislature, in 1923, specifically appropriated from the game protection fund certain definite sums for the use of the state game-warden, and authorized their expenditure, subject to the provisions of the Financial Code above quoted. We conclude, therefore, that the expenditures of the state game-warden, for the period involved in this case, are controlled by the general appropriation bill of 1923, and the Financial Code of 1922, and not by the provisions of chapter 82 of the Session Laws of 1912, and that the judgment of the superior court in refusing to compel

·the auditor to audit and approve appellant's claim under said chapter was correct.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.