643 P.2d 712

Kenneth L. McLEOD, D. V. M., Plaintiff-Appellee-Appellant,

v.

Kenneth CHILTON, Lawrence Beck, Robert Bowman, Dwayne Dobson, Don Martin and Kenneth Morrison, individually and as members of the State of Arizona Livestock Sanitary Board; Joseph Samsill; Wayne Wiekhorst, D. V. M.; and the State of Arizona, Defendants-Appellants-Appellees.

Nos. 1 CA–CIV 5117, 1 CA–CIV 5216, 1 CA–CIV 5481 and 1 CA–CIV 5761.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 10, 1981.

Rehearing Denied Jan. 27, 1982.

Review Denied Feb. 23, 1982.

Lewis & Roca by Jeremy E. Butler, Paul G. Ulrich, Michael L. Cooper, Phoenix, for plaintiff-appellee-appellant.

Robert K. Corbin, Arizona Atty. Gen. by Stephen K. Smith, Asst. Atty. Gen., Phoenix, for defendants-appellants-appellees.

WREN, Chief Judge.

Plaintiff Kenneth L. McLeod, D. V. M., was dismissed by the State Livestock Sanitary Board (Livestock Board) from his position as Chief Veterinary Meat Inspector, a state position created by A.R.S. § 24–621. These appeals represent the culmination of the morass of litigation commenced by plaintiff as a result of that dismissal.

The central issues presented to us are:

(1) Whether the Livestock Board violated Arizona's "open meeting" laws, A.R.S. §§ 38–431 through 38–431.09, thus rendering the resolution to dismiss plaintiff "null and void" under A.R.S. § 38–431.05;

(2) Whether plaintiff had a "property interest" or a "liberty interest" in his employment sufficient to entitle him under the due process clause of the fourteenth amendment, to a *"pretermination"* hearing;

(3) Whether plaintiff is entitled to judicial review of the Livestock Board's decision to terminate him, either indirectly through the procedures governing appeals to the State Personnel Board (Personnel Board), A.R.S. §§ 41–781 through 41–785, or directly pursuant to the Administrative Review Act, A.R.S. §§ 12–901 through 12–914.

These issues arise through appeals, which have been consolidated by order of this court, from four separate superior court orders. Specifically, the Livestock Board appeals from:

(1) A preliminary injunction issued November 9, 1979, directing the Livestock Board to reinstate plaintiff as the chief veterinary meat inspector until a hearing was held before the Personnel Board;

(2) A second preliminary injunction issued on January 18, 1980, again directing the Livestock Board to reinstate plaintiff pending the Personnel Board hearing, and additionally awarding plaintiff back wages from November 9, 1979; [1] and

(3) A superior court order determining that the Personnel Board had jurisdiction to hear plaintiff's case entered pursuant to an appeal to the superior court under A.R.S. § 41–785, which provides for appeals to superior court from Personnel Board decisions, after the Personnel Board had determined it was without jurisdiction to hear the case on its merits;

and plaintiff appeals from:

(4) A superior court order dismissing plaintiff's claim based on the Administrative Review Act, A.R.S. § 12–901 *et seq.*, for lack of jurisdiction.

The facts and circumstances surrounding the issuance of these orders are as follows. The Livestock Board is a state agency responsible for "protect[ing] the public from diseased and unwholesome meat products." A.R.S. § 24–104(A)(1). The position of "chief veterinary meat inspector" is created by A.R.S. § 24–621. The chief inspector is to be appointed by the Livestock Board and

1. The Livestock Board had already appealed the November 9, 1979 injunction to this court, challenging its validity for, among other things, the failure to have a bond set and posted pursuant to rule 65(e), Arizona Rules of Civil Procedure. This court, upon plaintiff's application, revested jurisdiction in the superior court for the limited purpose of permitting consideration by that court of an application by plaintiff for

the setting and posting of security. The January 1980 injunction issued as a result of this superior court proceeding. The validity and effect of the two injunctions need not be discussed, however, since it is our determination that they were based upon an incorrect assumption, *i.e.*, that the Personnel Board had jurisdiction to hear the plaintiff's case.

"shall serve at the pleasure of the board." A.R.S. § 24–621(A). Plaintiff had served as chief inspector for some twenty-three years prior to his dismissal.

Sometime during the last years of plaintiff's service, the Livestock Board became concerned with what it considered plaintiff's lax administration of the meat inspection program. In early June, 1979, Joe Samsill, the Livestock Board's Assistant Director of Administrative Services, met with plaintiff, discussed with him the Livestock Board's dissatisfaction with his present administrative procedures, and set a deadline in late June for shoring up the program's administration. On June 29, 1979, Samsill informed plaintiff that the Livestock Board still considered plaintiff's work as unsatisfactory, and offered him the option of accepting a voluntary demotion, being involuntarily demoted, or being dismissed. Plaintiff refused to accept a demotion.

Consequently, on August 22, 1979, the Livestock Board met and considered plaintiff's employment. Plaintiff had requested, prior to the meeting and in writing, pursuant to A.R.S. § 38–431.03, that all discussion concerning his employment be held in open session. After some discussion of plaintiff's situation in open session, the Livestock Board voted to continue discussing plaintiff's employment in "executive" session; that is, not before the public. A.R.S. § 38–431.03. Plaintiff objected to this procedure. Following the "executive" session, the Livestock Board returned to open session, where it voted to direct Samsill, now Acting Director for the Board, to request plaintiff to resign effective August 24, 1979, or, if plaintiff did not tender his resignation by that date, to dismiss him.

Plaintiff indicated he would not resign, and on August 23, 1979, received a nine-page dismissal letter, effective August 24, prepared and signed by Samsill. The letter opened by stating some general grounds regarding the dismissal, then outlined several specific situations where the Board felt plaintiff had not satisfactorily performed his duties as chief inspector. The particular dissatisfaction with plaintiff's performance in the bulk of these outlined situations involved plaintiff's reluctance to impose sanctions upon certain meat processing and packaging installations for their continuing disregard of sanitary standards. One situation involved an alleged conflict of interest. The letter closed by advising plaintiff of his right to appeal his dismissal to the Personnel Board. See A.R.S. § 41–768.

Upon receipt of the dismissal letter, plaintiff instituted a suit in two counts in superior court. Count One sought to nullify the August 22, 1979 Livestock Board action ordering his dismissal on the grounds that the "executive" session was held in violation of the Arizona open meeting laws, A.R.S. § 38–431 et seq., and thus the Board's actions taken pursuant to that session were "null and void." A.R.S. § 38–431.05. Count One also sought injunctive relief from any further attempt to terminate plaintiff pursuant to any Livestock Board resolution entered at the August 22 meeting. Count Two sought both damages and injunctive relief, based on 42 U.S.C.A. § 1983, alleging the Livestock Board had deprived the plaintiff of liberty or property without due process of law by not affording him a pretermination hearing. Additionally, Count Two prayed for an order restraining the Livestock Board from taking any further steps in connection with its plan to terminate plaintiff until a Personnel Board hearing was held.

While these matters were pending, the Livestock Board, on August 30, held a second meeting, this time completely in open session, in an attempt to cure both the alleged open meeting violation and the alleged deprivation of due process under 42 U.S.C.A. § 1983. At this meeting, the Board again voted to order plaintiff's dismissal. Shortly thereafter, plaintiff amended his complaint by adding a third count based on the Administrative Review Act, A.R.S. § 12–901 et seq., seeking judicial review of the procedures surrounding his dismissal. Plaintiff also filed a timely appeal with the Personnel Board. See A.R.S. § 41–768.

Based on the complaint filed in superior court, Judge Michael E. Bradford issued the November 9, 1979 injunction ordering plaintiff's reinstatement pending a Personnel Board hearing. This injunctive order was apparently based on the court's feeling that a *prima facie* "open meeting" violation had occurred, and that the August 30 Livestock Board meeting had not cured that defect. It is unclear what portion, if any, of the relief granted by the court was premised on plaintiff's due process request for a pretermination hearing. The court's conclusion of law indicates that reinstatement was based on the open meeting violation. However, the court's findings of fact numbers 6 and 7 state:

6. The dismissal of Dr. McLeod occurred in an atmosphere infused with allegations of scandal directed against the Livestock Sanitary Board and *carries a taint of unethical conduct on Dr. McLeod's part.*

7. The charges against Dr. McLeod and the attendant dismissal from his position are causing him a loss of pay and *may be causing injury to his reputation.* (emphasis added)

It further appears that plaintiff's claim under the Administrative Review Act was not considered or ruled upon at this time. The January 18, 1980 injunction was based on the same findings of fact and conclusions of law. The Livestock Board, as noted above, appealed from both orders.

While preparing for the Personnel Board hearing, the Livestock Board [2] discovered the language in A.R.S. § 24–621(A) which provides:

There is created the office of chief veterinary meat inspector. The [Livestock]

board shall appoint [the chief inspector] . . . . [H]e shall serve at the pleasure of the board. (emphasis added)

The Livestock Board then filed a motion to dismiss the Personnel Board action, contending the above emphasized language— "shall serve at the pleasure of the board"— exempted plaintiff from the operation of the State Merit System [3] under A.R.S. § 41–771(12), set forth hereafter, and thus the Personnel Board was without jurisdiction over the matter. The Personnel Board agreed, and dismissed the case. Plaintiff appealed the dismissal to the superior court under A.R.S. § 41–785, and the superior court, exercising appellate jurisdiction, determined the Personnel Board did have jurisdiction, and remanded the matter back to the Personnel Board with instructions to proceed with a hearing. This was the third order appealed from by the Livestock Board.

In the meantime, when the Personnel Board denied jurisdiction, plaintiff instituted a second action in superior court based on the Administrative Review Act, *supra.* The Livestock Board then brought motions to dismiss for lack of jurisdiction over both this second action *and* the original Administrative Review Act claim, count three of plaintiff's original complaint as amended. The motions were considered by two different divisions of the Maricopa County Superior Court. The Honorable Morris L. Rozar (Division 7) denied the motion. The Honorable David J. Perry (Division 18) granted the motion. Plaintiff, as above indicated, appealed from the order granting the motion to dismiss.

---

2. The Arizona Attorney General's Office appeared on behalf of the Livestock Board, and on behalf of the State, which had also been named in the suit. References to all defendants will continue to be made in the name of the Livestock Board only.

3. The "State Merit System" is comprised of Articles 5 and 6 of Title 41 of the Arizona Revised Statutes (A.R.S. §§ 41–761 through 41–785), and, generally speaking, provides that non-exempt state employees may only be dismissed "for cause" after having served a pro-

bationary period. The Personnel Board is an integral part of the Merit System, being the mechanism through which non-exempt state employees are entitled to challenge the propriety of the termination decisions of their state agency employer as to whether or not the dismissal was properly "for cause." The Merit System will be interchangeably referred to throughout the remainder of this opinion as the "merit system" or the "Personnel Board statutes."

## OPEN MEETING VIOLATION

We first consider the alleged "open meeting" violation. We note at the outset that plaintiff contends the preliminary injunctions, entered in November 1979 and January 1980, respectively, were not based on an "open meeting" violation, but rather on his due process contention of not having been afforded a pretermination hearing. We will, nevertheless, briefly address the issue since it is appropriate to a complete disposition of this appeal.

A.R.S. § 38–431.03 states in part:

A. Upon a public majority vote of the members constituting a quorum, a public body may hold an executive session but only for the following purposes:

1. Discussion or consideration of employment, assignment, appointment, promotion, demotion, salaries, disciplining or resignation of a public officer, appointee or employee of any public body, except that with the exception of salary discussions, an officer, appointee or employee may demand that such discussion or consideration occur at a public meeting.

A.R.S. § 38–431.05 states:

All business transacted by any public body during a meeting held in violation of the provisions of this article shall be null and void.

It is admitted by the Livestock Board that an executive session was held at the August 22 board meeting, contra to the request of plaintiff and thus in violation of A.R.S. § 38–431.03. The Board contends, however, that the August 30 meeting, wherein the Board voted and readopted its plan to dismiss plaintiff, cured that violation. The trial court disagreed that a subsequent reaffirmation of a matter previously considered in executive session could cure the defect. Since the trial court's ruling on the issue, however, this court has found to the contrary. In *Cooper v. Arizona Western College District Governing Board*, 125 Ariz. 463, 610 P.2d 465 (App.1980), we stated:

The trial judge determined that the board's resolution adopted at the January 18 public meeting "reaffirmed" and approved the action taken on January 11

and 12, but that the board could not "breathe life into a void act." We disagree with the trial judge's conclusion, under the circumstances of this case, that the board could not validly approve and adopt at a public meeting the action which the board had previously taken.

We find no provision in the Arizona statutes relating to public meetings which precludes a public body from adopting at a subsequent public meeting action which was legally ineffective from a previous meeting of the public body. *Id.* at 468, 610 P.2d at 470.

The circumstances before us are not materially different from *Cooper.* We therefore find that the public meeting of the Livestock Board held August 30, 1979, wherein the Board readopted its August 22 resolution to dismiss plaintiff operated to cure the "open meeting" defect. *See also, Hokanson v. High School District No. 8 of Pima County,* 121 Ariz. 264, 589 P.2d 907 (1978).

## PERSONNEL BOARD HEARING

A.R.S. § 24–621 states in relevant part:

A. There is created the office of chief veterinary meat inspector. The board shall appoint an Arizona licensed veterinarian to fill this office, who shall have had a minimum of four years experience of meat inspection work in slaughtering establishments. His compensation shall be as determined pursuant to § 38–611 and *he shall serve at the pleasure of the board.* (emphasis added).

The key to this case is the construction and effect to be given the phrase "he shall serve at the pleasure of the board."

The Livestock Board contends the phrase renders plaintiff terminable at will by the Board, and that plaintiff is thus exempted from the Merit System by A.R.S. § 41–771, which states:

The provisions of this article and article 6 [the Merit System] do not apply to:

\*    \*    \*    \*    \*    \*

(12) Any other position exempted by law.

The Board's argument, in short, is that since under the Merit System an employee

can only be dismissed for "cause", an employee terminable at will by the terms of the statute creating the employment is thus "exempted by law" within the meaning of A.R.S. § 41–771(12). Plaintiff disagrees, contending the phrase does not operate to exempt him from the Merit System. Therefore, he contends, he can be dismissed only for "cause", and is entitled to both a Personnel Board hearing and the right to appeal to the superior court from a decision rendered on that hearing. *See* A.R.S. §§ 41–768; 41–770; 41–785.

Plaintiff's argument relies on the following sequence of legislative events: A.R.S. § 24–621, stating the chief inspector "shall serve at the pleasure of the board", was enacted prior to the Merit System, which was adopted in 1968. As originally enacted, only eleven categories of particular employees were exempted from the Merit System; the position of chief veterinary meat inspector did not fall within any of those exempted categories. In 1970, A.R.S. § 24–621 was amended[4], but the "shall serve at the pleasure of the board" language was not altered by the legislature. In 1972, the Merit System exemption statute was renumbered A.R.S. § 41–771,[5] and amended by the addition of section (12), which provides that the Merit System does not apply to "[a]ny other position exempted by law."

Plaintiff's analysis of this legislative history is that his position as chief veterinary meat inspector should be considered to be within the coverage of the Merit System. His argument goes as follows: In 1968, former A.R.S. § 38–901[6] provided:

In this chapter [the Merit System], unless the context otherwise requires:

\* \* \* \* \* \*

4. "Employee" means a person holding a position in state service.

5. "State service" means all offices and positions of employment in state government except offices and positions exempted by the provisions of this chapter.

Thus, since he was, in 1968, an "employee" in "state service" and not exempt under former A.R.S. § 38–921, plaintiff was undeniably within the Merit System from 1968 until 1972. Plaintiff then argues that the fact he was in the Merit System, and therefore could *not* be dismissed other than for "cause", was inconsistent with any power to terminate him at will under the language of A.R.S. § 24–621, the earlier act. The power of the Livestock Board to terminate him at will was thus superseded or repealed by implication, since the general rule of statutory construction is that where two valid acts are inconsistent, the later act prevails. *State ex rel. Purcell v. Superior Court*, 107 Ariz. 224, 485 P.2d 549 (1971); *State v. Angle*, 54 Ariz. 13, 91 P.2d 705 (1938); *Willard v. Hubbs*, 30 Ariz. 417, 248 P. 32 (1926). Thus, he concludes, when A.R.S. § 41–771(12) was added in 1972, that section did not operate to then remove plaintiff from the Merit System, since no specific legislative intent to so exempt plaintiff's position *per se* was indicated in the amendment. In support of this contention that a specific legislative intent is needed to exempt him, plaintiff points, by way of example, to some statutes creating state employment positions enacted *after* the addition of A.R.S. § 41–771(12) which statutes provide *both* that the office holder "shall serve at the pleasure of" the appointing authority *and* "is exempt from the provisions of the state personnel [merit] system."[7]

Lastly, plaintiff argues, in relation to the 1970 amendment of A.R.S. § 24–621, that

---

**4.** *See* Laws 1970, ch. 204, § 65.

**5.** The original exemption statute was former A.R.S. § 38–921. For the amendment, *see* Laws 1972, Ch. 141, § 4.

**6.** *See* Laws 1968, Ch. 200, § 1. This section was amended and renumbered A.R.S. § 41–762 in 1972, *see* Laws 1972, Ch. 141 § 4, but the definitions of "employee" and "state service"

remained essentially unchanged. *See* A.R.S. § 41–762(1) and (2).

**7.** *See, e.g.*, the 1976 statutes surrounding the creation of the post of the Director of Library, Archives and Public Records, A.R.S. §§ 41–1331(B) and 41–1332(C), and the 1977 statute creating the post of System Manager for the Criminal Justice Information System, A.R.S. § 41–2204.

since both the Livestock Board and the Personnel Division treated plaintiff as within the Merit System prior to the time of the amendment to A.R.S. § 24–621, the legislature, since it did not alter or clarify what it meant by the "serve[s] at the pleasure of" language in § 24–621, presumptively intended to adopt the prior administrative interpretations of the Livestock Board and Personnel Division that plaintiff was not exempt from the Merit System by virtue of that provision. *See Long v. Dick*, 87 Ariz. 25, 347 P.2d 581 (1959); *Mummert v. Thunderbird Lanes, Inc.*, 107 Ariz. 244, 485 P.2d 814 (1971).

■■■ The major flaw in this argument is that A.R.S. § 24–621 and its "shall serve at the pleasure of the board" mandate is *no longer in conflict* with the Merit System statutes. Although, generally speaking, where statutes are in conflict the later governs, *Willard, supra*, if a later amendment to one or the other renders the two statutes capable of being construed as consistent then a construction, which gives full effect to both should prevail. In *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 733 (1970), our supreme court stated:

> The general rule is that the court may look to prior and contemporaneous statutes in construing the meaning of a statute which is uncertain and on its face susceptible to more than one interpretation. If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent. If the statutes relate to the same subject or have the same general purpose—that is, statutes which are in pari materia—they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law. As they must be construed as one system governed by one spirit and policy, the legislative intent therefor must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes. *This rule of construction applies even where the statutes were enacted at different times, and contain no reference one to the other, and it is immaterial that they are found in different chapters of the revised statutes.* In construing the statute, endeavors should be made to trace the history and legislation on the subject in order to ascertain the consistent purpose of the legislation. (emphasis added).

Later in the same opinion, the court quotes with approval the following from *Frazier v. Terrill*, 65 Ariz. 131, 175 P.2d 438 (1947):

> On the presumption that whenever the legislature enacts a provision it has in mind the previous statutes relating to the same subject matter, it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together. * * * 106 Ariz. at 123, 471 P.2d 731.

Furthermore, it is presumed that by amending a statute, the legislature intends to make some change in the existing law. *Sterman v. Transamerica Title Insurance Co.*, 119 Ariz. 268, 580 P.2d 729 (App.1978). Moreover, we find the law generally to be specific that:

> A public employee serving at the pleasure of the appointing authority . . . is by the terms of his employment subject to removal without judicially cognizable good cause.

*Bogacki v. Board of Supervisors of Riverside County*, 5 Cal.3d 771, 97 Cal.Rptr. 657, 665, 489 P.2d 537 (1971). *Accord, Dixon v. Osman*, 22 Ariz.App. 430, 528 P.2d 181 (1974); *Ernst v. Arizona Board of Regents*, 119 Ariz. 129, 579 P.2d 1099 (1978); *State v. Jenkinson*, 222 N.E.2d 825 (Ohio App.1966); *Naef v. City of Allentown*, 424 Pa. 597, 227 A.2d 888 (1967). Thus, although A.R.S. § 24–621 and the Merit System were in apparent conflict prior to 1972, the addition of A.R.S. § 41–771(12) removed that conflict. As to plaintiff's arguments concerning administrative interpretation, we note that, although such interpretations should be accorded some weight in construing the

statute, administrative interpretations are not binding on this court. *Arizona Foundation for Neurology and Psychiatry v. Sienerth*, 13 Ariz.App. 472, 477 P.2d 758 (1970).

■ We hold that plaintiff is exempted from the Merit System by virtue of A.R.S. § 41–771(12), since he serves at the pleasure of his appointing authority. The November 1979 and January 1980 preliminary injunctions are therefore quashed, since they are premised on the erroneous assumption that plaintiff is entitled to a Personnel Board hearing.

### ADMINISTRATIVE REVIEW ACT

Plaintiff next contends that, in the alternative, he is entitled to judicial review of the decision to terminate him, pursuant to the Administrative Review Act, A.R.S. § 12–901, *et seq.* We disagree.

■ There is no absolute right to an appeal. That right exists only where specifically created by statute. *Smith v. Trott*, 36 Ariz. 166, 283 P. 726 (1930); *County of Pima v. State Department of Revenue, Division of Property and Special Taxes*, 114 Ariz. 275, 560 P.2d 793 (1977). A.R.S. § 12–902(A), delineating the scope of the Administrative Review Act, states:

This article applies to and governs every action to review judicially a final decision of an administrative agency *except* the state department of public welfare, *or where the act creating or conferring power on an agency or a separate act provides for judicial review of the agency decisions and prescribes a definite procedure for the review.* (emphasis added).

■ Plaintiff argues that if he is foreclosed from seeking judicial review under the Personnel Board statutes, specifically A.R.S. § 41–785, due to his exemption from the Merit System under A.R.S. § 41–771(12), he must have the right to appeal pursuant to the Administrative Review Act, since statutes pertaining to the creation, powers, duties and operation of the Livestock Board do not provide for judicial review of that board's personnel decisions.[8] Plaintiff, in order to make this argument, also contends that the Personnel Board statutes do not constitute a "separate act" providing for judicial review of the agency decision as contemplated by A.R.S. § 12–902(A), set forth above.

An argument strikingly similar to plaintiff's was made and rejected in *County of Pima v. State Department of Revenue, supra.* In that case, Pima County attempted to proceed under the Administrative Review Act when it was foreclosed from seeking review of a valuation decision of the Department of Revenue, since the county was not a party permitted to seek review under the statute creating the right to appeal from such a Department of Revenue decision. The court reasoned:

The appellants argue nevertheless that the Administrative Review Act is here pertinent because *as applied to them,* Title 42 does not provide either an avenue of appeal or a procedure for review of the Board's decision, thereby excluding them from the exception clause contained in § 12–902(A). To construe that statute in this manner, however, would not comport with the obvious legislative intent underlying § 12–902. That section was enacted to permit judicial review of administrative decisions when review of an agency's decision has not been otherwise provided for. *Knape v. Brown*, 86 Ariz. 158, 342 P.2d 195 (1959). That is not the case here where Title 42 has provided both judicial review and a definite procedure to implement the review of the Board's rulings. Clearly, § 12–902 was not intended and cannot be read to confer the right of appeal from an agency's decisions

---

8. Certain Livestock Board decisions are specifically made appealable, expressly through utilization of the Administrative Review Act, by those statutes delineating the Board's scope and powers. *See, e.g.,* A.R.S. §§ 24–621.04 and 24–621.15. It has been noted, however, that the existence of statutes providing for review of specific agency decisions means, by implication, that such review is precluded for all other decisions of the subject agency. *See, Application of Hathcock*, 9 Ariz.App. 178, 450 P.2d 419 (1969); Note, *Judicial Review of Administrative Action in Arizona*, 1975 Ariz.St. L.J. 739, 754.

on one who has not been included among those given the right of review in the particular statutes that make such review of the agency's decisions available. Hence, the Administrative Review Act cannot confer on the appellants the authority to appeal the Board's decision to the superior court. (emphasis added). 114 Ariz. at 278, 279, 560 P.2d at 796, 797.

Plaintiff here similarly contends that, as applied to him, the Personnel Board statutes do not provide a procedure for review, therefore excluding him from the exception clause of A.R.S. § 12–902(A). We disagree for the same reasons stated above by the supreme court in *County of Pima.*

Plaintiff attempts to distinguish *County of Pima* by noting that the statute there providing for review pertained directly to Department of Revenue decisions and was a part and parcel of the same title of laws, Title 42, prescribing the powers and procedures of the revenue department. Such a distinction, however, draws too fine a line.

■ It is our view that the Merit System initially encompasses *all* state personnel, and only *then* proceeds to exempt certain classes of employees from its purview. Inasmuch as A.R.S. § 41–785(D) provides a procedure whereby a state employee may ultimately gain review in superior court of an adverse Personnel Board Decision, there is a "separate act" providing for judicial review of the agency's general personnel decisions within the meaning of A.R.S. § 12–902(A). Plaintiff here then is in much the same position as was the county in *County of Pima, supra,* since A.R.S. § 12–902 "cannot be read to confer the right to appeal from an agency's decisions on one who has not been included among those given the right of review in the particular statutes that make such review of the agency's decisions available." *Id.* at 279, 560 P.2d at 796. Plaintiff is not entitled to appeal the Livestock Board's decision to the superior court on the basis of the Administrative Review Act.

## DUE PROCESS ISSUES

We must next determine whether plaintiff was entitled to a *pretermination* hearing in order to comport with due process, notwithstanding his "at will" status.

■ Due process procedural protections apply to the dismissal of a public employee if the employee can demonstrate a property or liberty interest in his job. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Dixon v. Osman, supra* ; Note, *Property and Liberty Limitations on the Dismissal of Arizona Public Employees,* 1977 Ariz. St.Law Journal 835.

■ In light of our above determination that plaintiff's employment is "at will", it is clear that he had no property interest in his employment. No property right is involved when the individual has only an abstract need or desire for the job, rather than a legitimate claim of entitlement to that particular employment based on contract, statute, or regulation. *Dixon v. Osman, supra; Board of Regents v. Roth, supra.*

■ Plaintiff insists, however, that a *liberty* interest was involved. A liberty interest arises where the dismissal imposes upon the employee a stigma or reputational harm which forecloses further employment opportunities or results in significant damage to the employee's standing in the community. *Smith v. Pima County Law Enforcement Council,* 113 Ariz. 154, 548 P.2d 1151 (1976); *Cato v. Collins,* 539 F.2d 656 (8th Cir. 1976).

■ Initially, it is to be noted that the stigma which attaches to the mere fact of dismissal alone, or dismissal where no statement or reasons is given, does not give rise to a liberty claim. *Rottenberg v. Cartwright,* 22 Ariz.App. 473, 528 P.2d 859 (1974); *White v. Superior Court in and for County of Pima,* 25 Ariz.App. 438, 544 P.2d 262 (1975).

■ The threshold issue then is whether a liberty interest is involved. If not, plaintiff is not entitled to any due process procedural protections regarding his dismissal,

and *no* form of hearing whether pre- or post-termination, is required. The trial court's findings of fact from the hearing on plaintiff's initial complaint indicate that the Livestock Board met on August 22, 1979, and voted to recommend plaintiff's dismissal *after discussion in executive session*, contrary to plaintiff's request. The dismissal letter was then sent to plaintiff. Since the plaintiff served at the Livestock Board's pleasure, it could dismiss plaintiff for *any* reason not constitutionally impermissible,[9] and, as such, was under no requirement to inform him of those reasons. *See White, supra.* The contents of the letter and the reasons for plaintiff's dismissal were not made public until after plaintiff's *request* that all discussions involving his dismissal be had in public. In *Cato v. Collins*, 539 F.2d 656 (8th Cir. 1976), the *Federal District Court of Appeals* stated:

> Nonrenewal of a teaching contract alone does not constitute a deprivation of an interest in liberty. If, however, the reasons for nonrenewal are announced publicly or are incorporated into a record made available to prospective employers, the reasons may affect a teacher's chances of securing another job.

> In this case, the record indicates that the reasons for the nonrenewal of appellant's contract were not publicized by the board nor incorporated into any employment record. The board informed appellant of the reasons for nonrenewal in a confidential letter and did not publicly announce those reasons. It was only at appellant's request that public hearings were held, where the circumstances surrounding and the reasons for nonrenewal became public information. Such disclosure of the reasons for nonrenewal at the teacher's request cannot form the basis for an interest in liberty. (cites/footnote omitted.) *Id.* at 660.

Even if a liberty interest had been involved, we do not feel plaintiff would have been entitled to a *pretermination* hearing. In *City of Flagstaff v. Superior Court in and for Coconino County*, 116 Ariz. 382, 569 P.2d 812 (1977), our supreme court adopted the balancing test set forth by the Ninth Circuit in *Peacock v. Board of Regents of the Universities and State Colleges of Arizona*, 510 F.2d 1324 (9th Cir. 1975), cert. denied, 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975), to determine whether a pretermination hearing is required. In that balance is, on the one hand, the need of the agency employer and the public for efficient operation of that agency's duties, against, on the other hand, the employee's interest in a pretermination hearing. Here, the interests of the Livestock Board and the public in maintaining a loyal and efficient operation to protect the public from the distribution of unwholesome meat products outweigh the plaintiff's interests especially where, as here, the plaintiff's only interest in a pretermination hearing is to "clear his name", since he has no right, even if all the charges are false, to retention of his old job. *See Smith v. Pima County Law Enforcement Council, supra.*

The November 9, 1979 and January 18, 1980 preliminary injunctions are quashed. The order vesting jurisdiction in the Personnel Board is reversed. The order dismissing plaintiff's claim based on the Administration Review Act is affirmed.

FROEB and CONTRERAS, JJ., concur.

---

**9.** Constitutionally impermissible reasons for discharging a state employee would be discharge because of the employee's exercise of his First Amendment free speech rights, or his Fifth Amendment right not to incriminate himself, or a discharge involving the equal protection clause of the Fourteenth Amendment by virtue of the employee's race, etc. *See Dixon v. Osman, supra* at 432, 528 P.2d at 183, and the cases cited therein. Plaintiff has made no allegation that his discharge was based on any such grounds.