580 P.2d 729

Albert STERMAN and Brenda Sterman, husband and wife, William R. Fasse and Marsha S. Fasse, husband and wife and all others similarly situated, Appellants,

v.

TRANSAMERICA TITLE INSURANCE COMPANY, a California Corporation, Arizona Title Insurance and Trust Company, an Arizona Corporation, Lawyers Title of Arizona, an Arizona Corporation, Pioneer National Title Insurance Company, a California Corporation, Uslife Title Company of Arizona, an Arizona Corporation, Stewart Title & Trust of Tucson, an Arizona Corporation, Title Insurance Company of Minnesota, an Arizona Corporation, Title Security Agency of Arizona, an Arizona Corporation, and Chicago Title Insurance Company, a Missouri Corporation, its principal, Western Title Insurance Agency, an Arizona Corporation, and Commonwealth Land Title Insurance Company, a Pennsylvania Corporation, its principal, Land Title Association of Arizona, an Arizona Corporation and Title Insurance Rating Bureau of Arizona, an Arizona Corporation, Appellees.

No. 2 CA–CIV 2597.

Court of Appeals of Arizona, Division 2.

Jan. 18, 1978.

Rehearing Denied March 8, 1978.

Review Denied April 18, 1978.

O'Dowd & Burke by Erik M. O'Dowd, Tucson, for appellants.

Lewis & Roca by John P. Frank, Kimball J. Corson and Fish, Briney, Duffield, Miller, Young & Adamson, P. C. by Richard Duffield, Tucson, for appellee Transamerica Title Ins. Co.

Merchant, Lohse & Bloom by Ashby I. Lohse, Tucson, for appellee Arizona Title Ins. and Trust Co.

Bilby, Shoenhair, Warnock & Dolph, P. C. by Michael A. Lacagnina and David A. Paige, Tucson, for appellee Lawyers Title of Arizona.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman and Janice A. Wezelman, Tucson, for appellee Pioneer Nat. Title Ins. Co.

Jennings, Strouss & Salmon by Riney B. Salmon, II, and David L. White, Phoenix, for appellee USLIFE Title Co. of Arizona.

Molloy, Jones, Donahue, Trachta & Childers, P. C. by Michael J. Meehan, Tucson, for appellee Stewart Title & Trust of Tucson.

Edward B. Towey, Denver, Colo., for appellee Title Ins. Co. of Minnesota.

Bell, Boyd, Lloyd, Haddad & Burns by John C. Christie, Jr., Chicago, Ill., for appellees Title Sec. Agency of Arizona and Chicago Title Ins. Co.

Holesapple, Conner, Jones & Johnson by Edmund D. Kahn, Tucson, for appellees Title Ins. Co. of Minnesota; Title Sec. Agency of Arizona and Chicago Title Ins. Co.

Johnson, Hayes & Dowdall, Ltd. by Raymond F. Hayes, Tucson, for appellees Western Title Ins. Agency and Commonwealth Land Title Ins. Co.

McLoone, Theobald & Galbut, P. C. by Martin R. Galbut and Kevin T. Ahern, Phoenix, for appellee Land Title Ass'n of Arizona.

Brown & Bain, P. A. by Philip P. Berelson and Neil S. Cumsky, Phoenix, for appellee Title Ins. Rating Bureau of Arizona.

Bruce E. Babbit, Atty. Gen. by John C. Dutton, Jr., Asst. Atty. Gen., Phoenix, for amicus curiae John N. Trimble, Director of Arizona Dept. of Ins.

## OPINION

RICHMOND, Chief Judge.

The question on this appeal is whether the superior court has jurisdiction over a claim that appellees have unlawfully combined and conspired in fixing escrow fees charged by title insurance companies in Arizona. The trial court dismissed appellants' second amended complaint, concluding that the legislature has vested exclusive jurisdiction in the department of insurance to determine matters of regulation of and competition between title insurance companies, including the fees and rates charged for escrow services. In deciding that the general antitrust legislation of this state does not apply to appellants' claim, the court expressly found:

> "[T]hat by the enactment of Arizona's Comprehensive Insurance Code, Article 20 of the Arizona Revised Statutes, exclusive jurisdiction has been vested in the Department of Insurance for the determination of matters relating to the regulation of and competition between title insurance companies, that the effective and consistent administration of the Insurance Code by the Insurance Department requires that such exclusive juris-

diction extend to the provision of title insurance and to closely related services as are performed by these companies, which include escrow services, and that the general anti-trust legislation of the State of Arizona is thereby preempted with respect to the subject matter of this action, depriving this Court of jurisdiction over the Amended Complaint."

The title insurance industry in this state is extensively regulated by the department of insurance pursuant to statute. Does such regulation preempt the field, thereby precluding application of the state's anti-trust laws, A.R.S. §§ 44–1401 et seq.?

A.R.S. §§ 20–341, 20–342, and 20–361 to 20–379, inclusive, govern regulation of title insurance rates. Prior to its amendment in 1977, however, A.R.S. § 20–375 made no provision for rates for escrow services, although such services were authorized by A.R.S. § 20–1581(B). Appellants' claim arose prior to the 1977 amendment.

■ Appellees cite a line of federal cases interpreting the exemption of state regulated insurance industry by the McCarran-Ferguson Act from federal antitrust laws.[1] See, e. g., McIlhenny v. American Title Insurance Company, 418 F.Supp. 364 (E.D.Pa. 1976); Schwartz v. Commonwealth Land Title Insurance Company, 374 F.Supp. 564 (E.D.Pa.1974), supp. opinion 384 F.Supp. 302. In that context, the standard "is to determine only whether the [state] has regulated the business of title insurance, and not to determine whether this regulation could be better and more effectively done." Schwartz, supra, 374 F.Supp. at 576. It is sufficient, by that standard, that the state regulatory statutes are comprehensive and confer virtually plenary regulatory power on the state insurance department, which can be exercised by "silent approval as well as by disapproval." Id. at 577 n.16. Appellees contend by analogy that statutory provisions intensively regulating every aspect of a title insurer's business require supervision by the insurance department of all services bearing an integral relationship with the title insurance business, indicating clear legislative intent to supersede the state's general antitrust laws as they might otherwise apply to insurance companies.

■ Although we question whether rates for escrow services were subject to regulation by the insurance department prior to the 1977 amendment of § 20–375, we do not regard that issue as dispositive. Appellees concede that no schedule of such rates ever was filed with the director of insurance, as presently required by the 1977 amendment to § 20–376. In contrast with the McCarran Act exemption, which is called into play by the existence of a state scheme of regulation whether or not such scheme has been effectively enforced, see Ohio AFL–CIO v. Insurance Rating Board, 451 F.2d 1178 (6th Cir. 1971), the presence or absence of enforcement is a determinative factor on the broader question of implied repeal of the antitrust laws by regulatory provisions.

In Gordon v. New York Stock Exchange, Inc., 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975), also relied on by appellees, the Court held that fixing of commission rates by members of the securities exchanges was immune from antitrust attack because of the Securities and Exchange Commission's authority to approve or disapprove exchange commission rates and its exercise of that power. The Court reiterated:

"This Court has considered the issue of implied repeal of the antitrust laws in the context of a variety of regulatory schemes and procedures. Certain axioms of construction are now clearly established. Repeal of the antitrust laws by implication is not favored and not casually to be allowed. Only where there is a 'plain repugnancy between the antitrust and regulatory provisions' will repeal be implied."

422 U.S. at 682, 95 S.Ct. at 2611.

Mr. Justice Douglas in his concurring opinion stressed the Court's reliance on "a long history of actual SEC oversight and approval, and continued congressional affir-

[1]. For legislative history of the McCarran-Ferguson Act, see Securities & Exch. Com'n v. National Securities, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

mation of the SEC's role—in holding that the system of fixed commission rates employed on the securities exchanges is immune from antitrust attack":

"The mere existence of a statutory power of review by the SEC over fixed commission rates cannot justify immunizing those rates from antitrust challenges. The antitrust laws are designed to safeguard a strong public interest in free and open competition, and immunity from those laws should properly be implied only when some equivalent mechanism is functioning to protect that public interest. Only if the SEC is actively and aggressively exercising its powers of review and approval can we be sure that fixed commission rates are being monitored in the manner which Congress intended. Cf. *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 387–389, 93 S.Ct. 647, 660–662, 34 L.Ed.2d 577 (1973)." 422 U.S. at 691–2, 95 S.Ct. at 2616.

This strong public interest in fostering competition is recognized and reconciled with insurance rate regulation in A.R.S. § 20–341:

"The purpose of this article is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory, and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this article. Nothing in this article is intended to prohibit or discourage reasonable competition, or to prohibit or encourage, except to the extent necessary to accomplish the purpose stated in this section, uniformity in insurance rates, rating systems, rating plans or practices. This article shall be liberally interpreted to carry into effect the provisions of this section."

From the foregoing, in *Pacific Fire Rating Bureau v. Insurance Company of North America*, 83 Ariz. 369, 321 P.2d 1030 (1958), the Court held invalid a rule approved by the director of insurance which denied unlimited right of partial subscribership to the rating services of a rating organization. After quoting § 20–341, the Court said:

"Rate making bureaus are allowed to operate, contrary to the policy of forbidding combinations to establish rates, for the sole purpose of accomplishing the above. The primary purpose of allowing such combinations for rate making is to insure solvency on behalf of insurance companies. The necessary structure to establish rates, due to the contingencies upon which payment of the insurance rests, is very extensive and it is conceded that no insurer could afford to totally withdraw from rating bureaus. On the other hand partial subscribership and deviation (A.R.S. § 20–355) are provided so that competitive rates may inure to the benefit of the public."

83 Ariz. at 375, 321 P.2d at 1034.

Whereas in *Gordon*, the Court found that "failure to imply repeal would render nugatory the legislative provision for regulatory agency supervision of exchange commission rates", 422 U.S. at 691, 95 S.Ct. at 2615, no such repugnancy is found in the instant case. On the contrary, application of Arizona antitrust laws to rates for escrow services is compatible with § 20–341 as interpreted by the court in *Pacific Fire Rating Bureau*, supra. As the Court said in *Otter Tail Power Company v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973):

" 'Repeals of the antitrust laws by implication from a regulatory statute are strongly disfavored, and have only been found in cases of plain repugnancy between the antitrust and regulatory provisions.' [Citations omitted] Activities which come under the jurisdiction of a regulatory agency nevertheless may be subject to scrutiny under the antitrust laws."

410 U.S. at 372, 93 S.Ct. at 1027.

See also *Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U. S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

In *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), Ricci alleged that his membership in the commodity exchange was transferred to another in violation of exchange rules and the Commodity Exchange Act, and pursuant to an unlawful conspiracy. While recognizing that the regulatory act "clearly contemplates a membership organization and hence the existence of criteria for the acquisition, transfer, and loss of membership", the Court said:

"\* \* \* If the transfer of Ricci's membership was pursuant to a valid rule, the immediate question for the antitrust court is whether the rule itself and Ricci's exclusion under it are insulated from antitrust attack. \* \* \* On the other hand, if, as Ricci alleges, loss of his membership was contrary to Exchange rules, the antitrust action should very likely take its normal course, absent more convincing indications of congressional intent than are present here that the jurisdictional and remedial powers of the Commission are exclusive."

409 U.S. at 304, 93 S.Ct. at 581.

And in *United States v. National Ass'n. of Sec. Dealers, Inc.*, 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975), decided the same day as *Gordon*, the Court in a five-to-four decision held with respect to the activities challenged in Count I of the complaint that the Sherman Act has been displaced by the pervasive regulatory scheme established by the Maloney and Investment Company Acts, after first stating:

"There can be little question that the broad regulatory authority conferred upon the SEC by the Maloney and Investment Company Acts enables it to monitor the activities questioned in Count I, and *the history of Commission regulations suggests no laxity in the exercise of this authority.*" (Emphasis supplied) 422 U.S. at 734, 95 S.Ct. at 2450.

The acts charged in Count I focused in large part on NASD rules, and the Court pointed out that the Maloney Act requires registered associations to submit for SEC approval any proposed rule changes, as well as authorizing the SEC to request changes in or supplementation of association rules. The Court specifically noted that the latter power recently had been exercised with respect to some of the precise conduct at issue. (422 U.S. at 733, 95 S.Ct. at 2449.)

The pre-1977 history of regulation by the department of insurance with respect to title insurance company escrow rates bears no resemblance to the regulatory history described in the *NASD* case. Indeed, the director of the insurance department in an amicus curiae brief disclaims statutory authority for any such regulation prior to the 1977 amendment of the insurance code. In light of the legislative disavowal in § 20–341 of any intention to discourage reasonable competition, we find it unnecessary to disagree.

Finally, appellees contend the 1977 amendment expressly providing for regulation of escrow charges has made explicit what was implicit in the insurance code at the time appellants' second amended complaint was dismissed. They cite the rule that a statutory amendment which clarifies pre-existing law may be used by the courts in construing the earlier law. *City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964). As pointed out in that case, however, there is no occasion for resorting to rules of statutory interpretation where a statute is unambiguous, and we do not believe the rule has any application to an amendment expressly authorizing rate regulation in an area where the law previously was silent. Such an amendment does not construe or clarify a prior statute, as in *Killingsworth*. Instead, if any rule of statutory interpretation is required, we believe we must presume the legislature by the 1977 amendment intended to make a change in existing law. *See Finch v. State Department of Public Welfare*, 80 Ariz. 226, 295 P.2d 846 (1956).

In summary, despite the extensive regulation of the title insurance industry by the department of insurance, the regulatory scheme prior to 1977 did not extend to the particular activity challenged by appellants. We hold, therefore, that the doctrines of

preemption, exclusive jurisdiction, or implied repeal of the antitrust laws with respect to rates charged by title insurance companies for escrow services did not divest the superior court of jurisdiction over the antitrust violations alleged by appellants.

The judgments dismissing appellants' second amended complaint are reversed. Appellants conceded at argument that superior court jurisdiction over so much of the complaint as seeks injunctive relief is subject to being divested upon evidence that the pertinent 1977 amendments to the insurance code have been validly implemented by the department of insurance. *See Ricci*, supra. The case is remanded for further proceedings consistent herewith.

HOWARD and HATHAWAY, JJ., concurring.