804 P.2d 843

**TUCSON UNIFIED SCHOOL DISTRICT and Phoenix Elementary School District No. 1, Plaintiffs/Appellants,**

v.

**CHICAGO TITLE INSURANCE COMPANY; First American Title Insurance Company of Arizona; Lawyers Title Insurance Corporation; Safeco Title Insurance Company; Stewart Title Guaranty Company, and Ticor Title Insurance Company, Defendants/Appellees.**

No. 2 CA–CV 90–0170.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 15, 1991.

Grant Woods, Atty. Gen. by Alison J. Butterfield, Phoenix, and Hennigan & Mercer by J. Michael Hennigan, Los Angeles, Cal., for plaintiffs/appellants.

Butler & Stein, P.C. by Annette Everlove, Tucson, and Pepper, Hamilton & Scheetz by Peter Hearn, Philadelphia, Pa., for defendants/appellees.

Fulbright & Jaworski by David M. Foster, Washington, D.C., for defendant/appellee Stewart Title.

Gibson, Dunn & Crutcher by Robert E. Cooper, Los Angeles, Cal., and Gibson, Dunn & Crutcher by Phillip H. Rudolph, Washington, D.C., for defendant/appellee Ticor Title.

Cooley Godward Castro Huddleson & Tatum by Frank D. Tatum, Jr. and Paul J. Laveroni, San Francisco, Cal., and Levinson & Lieberman, Inc. by Burton S. Levinson, Beverly Hills, Cal., for defendant/appellee First American Title.

Adams, McCullough & Beard by John F. Graybeal and John J. Butler, Raleigh, N.C., for defendant/appellee Lawyers Title.

Bell, Boyd & Lloyd by John C. Christie, Jr. and Patrick J. Roach, Washington, D.C., for defendants/appellees Chicago Title and Safeco Title.

## OPINION

HATHAWAY, Judge.

This appeal is taken from the trial court's granting of a defense motion to dismiss the complaint in an antitrust action.

Plaintiffs/appellants school districts filed an antitrust action against six title insurance companies alleging that the companies had conspired to fix the prices of title insurance and title search services in connection with the sale of real estate in Arizona.

Appellees moved to dismiss the complaint presenting three different theories. The trial court granted the motion without stating the grounds relied on for the dismissal. Where the trial court does not specify the basis for its decision, we must affirm that decision if it is supported by any of the legal theories presented to the court. *Westberry v. Reynolds,* 134 Ariz. 29, 653 P.2d 379 (App.1982).

One of the arguments presented by appellees in the motion to dismiss was that the conduct complained of was authorized by Arizona statutes, and the complaint therefore failed to state a claim under Arizona antitrust laws. Citing *Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 637 P.2d 1053 (1981), appellees argued below that conduct which might normally be a violation of antitrust statutes is, nevertheless, permissible if specifically authorized by other statutes. They argued, correctly, that where there is a conflict between separate state statutes, the principle of statutory construction is that the specific statute governs over the general. *State v. Davis,* 119 Ariz. 529, 582 P.2d 175 (1978).

■ The conduct alleged to be a violation of Arizona antitrust laws is that appellees "participat[ed] in a title insurance rating bureau, through which they agreed from time to time upon the prices to be charged for title insurance and title search services in Arizona." Our inquiry must focus, therefore, on the statutory scheme established by the legislature to regulate title insurance companies to determine whether the complained of conduct is permissible in spite of the antitrust laws.

Rate-making by title insurance rating bureaus is specifically authorized by Arizona law. Title insurers must file their rates with the director of insurance as required by A.R.S. § 20–376(A):

Every title insurer shall file with the director its schedules of fees, every manual of classifications, rules and plans pertaining thereto, and every modification of any of the foregoing which it proposes to use in this state. Every such filing shall state the proposed effective date thereof, and shall indicate the character and extent of the coverage or service contemplated.

Pursuant to A.R.S. § 20–376(B), title insurers may satisfy this filing obligation by becoming a member of or a subscriber to a rating bureau:

A title insurer may satisfy its obligations to make such filings by becoming a member of, or a subscriber to, a licensed title insurance rating organization which makes such filings, and by authorizing the director to accept such filings on its behalf.

A.R.S. § 20–365 expressly authorizes cooperative action by title insurers in making rating bureau rates:

Cooperation among rating organizations and among rating organizations and insurers in rate making and in other matters within the scope of this article is authorized, if the filings resulting from such cooperation are subject to the provisions of this article. . . .

■ Appellants' first argument is that appellees' conduct has been found by the Federal Trade Commission to be in violation of federal law and therefore it cannot be permitted under state law. However, federal law specifically provides that "collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission" in an enforcement proceeding. 15 U.S.C. § 16(a). In addition, the United States Supreme Court has stated: "The federal anti-trust laws do not forbid the States to adopt policies that permit, but do not compel, anticompetitive conduct by *regulated* private parties." *Southern Motor Carriers Rate Conf. v. U.S.,* 471 U.S. 48, 60, 105 S.Ct. 1721, 1728, 85 L.Ed.2d 36, 47 (1985). (Emphasis in original). In *Sterman v. Transamerica Title Ins. Co.,* 119 Ariz. 268, 272, 580 P.2d 729, 733 (App. 1978), we found "extensive regulation of the title insurance industry by the department of insurance." Therefore, under the standard set in *Southern Motor Carriers,* if cooperative rate-setting for title insurance and title searches is permitted by Arizona statutes, such cooperation is not an antitrust violation.

Appellants argue that Title 20 of the Arizona statutes does not embrace title search services. They maintain that the statutes only deal with title insurance and escrow services. A.R.S. § 20–365 only permits cooperation in rate-making and other matters "within the scope of this article." Therefore, appellants argue, title searches which are not mentioned in "this article" are not protected from antitrust claims.

Appellants cite *Sterman* in support of their position that title searches are not covered by the title insurance statutes. *Sterman* involved price-fixing of services that were not title insurance and were not regulated (escrow services performed prior to 1977) and held that the insurance statutes did not preempt the state antitrust laws with respect to that activity. The argument is that the title insurance statutes did not mention escrow services until the legislature amended the law in 1977, and the *Sterman* court held that the antitrust laws apply to those services. The title insurance statutes do not mention title searches, therefore, applying the reasoning of *Sterman*, the antitrust laws apply.

We reject appellants' argument because we believe there is a fundamental difference between escrow services and title searches. Providing escrow services is not essential to the business of issuing title insurance. An escrow agent is merely a "stakeholder." The parties to a transaction deliver to the person or entity acting as escrow the documents necessary for their transaction, that is, contracts, deeds, notes, deeds of trust, mortgages, checks, etc. The escrow distributes the documents to the proper parties when the transaction closes and is complete. An escrow agent is a trustee with respect to those who retain him and properly executes his duties only as they are set out by the terms of the escrow agreement. *Miller v. Craig*, 27 Ariz.App. 789, 558 P.2d 984 (1976).

Title searches on the other hand are an essential element in issuing title insurance policies. One would not expect a life insurance company to issue a life insurance policy to an individual without first checking that person's medical history. We believe the same reasoning applies to the issuance of title insurance policies. A title insurance company that issued title insurance policies without a title search would not only be in violation of the law, A.R.S. § 20–1567, it would also soon be bankrupt.

Appellants' argument that the statutes in question apply only to issuing title insurance policies and nothing else, is contradicted by the very wording of A.R.S. § 20–376(A) which states: "Every title insurer shall file with the director its schedules of *fees*, ..." (Emphasis supplied). The statute clearly envisions more than one activity of the insurer generating a fee coming within its purview. We believe it is logical to conclude that the legislature intended the statutes in question to encompass the issuance of title insurance policies and all ancillary activities essential to that end.

We believe the title insurance statutes authorize insurers to cooperate in rate-making in the issuance of title insurance policies and any activity essential to such issuance, such as title searches. Therefore, such activity is not included within the reach of the Arizona antitrust laws. The trial court correctly granted the motion to dismiss the complaint.

Affirmed.

LIVERMORE and HOWARD, JJ., concur.