NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DANIEL D. MOLDOVAN, et al., *Plaintiffs/Appellants*,

*v.*

JO ANN LONG, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0470
FILED 05-30-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2022-001806
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

---

COUNSEL

Ivan & Associates, P.C., Glendale
By Florin V. Ivan
*Counsel for Plaintiffs/Appellants*

Roberts & Carver, PLLC, Prescott
By Paul L. Roberts, Jerry Carver
*Counsel for Defendant/Appellee Pioneer Title Agency, Inc.*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

---

**F U R U Y A**, Judge:

¶1 Elite Holdings, LLC ("Elite") and its manager, Daniel D. Moldovan, appeal from the superior court's grant of summary judgment in favor of Pioneer Title Agency, Inc.'s ("Pioneer"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 This litigation arose from Elite's 2020 sale of a Paradise Valley property ("Property") and centers on Pioneer's role as escrow agent in that transaction, particularly as concerns its disclosure of a November 2007 deed. That deed ("Turquoise Deed") reads, in relevant part:

> For the consideration of Ten Dollars, and other valuable considerations, I or we, JO ANN LONG, an unmarried woman, do/does hereby convey to JO ANN LONG, an unmarried woman as to *and* [sic] undivided 50% interest and TURQUOISE 5, LLC, an Arizona limited liability company as to an undivided 50% interest *JO ANN LONG, an unmarried woman as Grantor, and* ,[sic] the following real property situated in Maricopa, [sic] County, Arizona . . . .

(Emphasis added.)

¶3 In late December 2007, other recorded warranty deeds show the Property transferred from Long to Moldovan and then from Moldovan to Elite. Capital Title Agency, Inc. ("Capital"), the escrow agent for the 2007 conveyance to Moldovan, did not disclose the Turquoise Deed. Between 2008 and 2010, several deeds were recorded conveying the property between Elite, Moldovan, Moldovan's wife, and Long, ending with a conveyance to Elite in 2010.

¶4 In 2020, Elite listed the Property for sale, received an offer, and executed a purchase contract and escrow agreement with the buyer. The purchase contract named Pioneer as the escrow company for the

transaction; stated the contract "shall be used as escrow instructions"; and directed Pioneer to "obtain and deliver . . . a Commitment for Title Insurance together with [ ] documents that will remain as exceptions to Buyer's policy of Title Insurance . . . including but not limited to . . . deed restrictions." The escrow agreement cross-referenced the purchase contract and instructed Pioneer to "close this transaction upon fulfillment of any additional escrow/title requirements." Elite and the buyer set the close of escrow for August 17.

¶5        On July 30, Pioneer obtained a commitment for title insurance which required recording a deed from Turquoise 5, LLC ("Turquoise") to Elite "to eliminate interest created in [the Turquoise Deed]." On August 3, Pioneer emailed Moldovan, attached the title report, and wrote, "[l]ooks like the property is also owned by Turquoise 5, LLC. We'll need to have them sign a deed coming off title….(we'll need proof of the authorized signer as well for Turquoise 5) and then have you both sign a deed to the buyer." (Ellipses in original.) Elite asserts this date was the first time it learned of the Turquoise Deed. Four days later, Elite and the buyer agreed to set the closing date for August 7.

¶6        Shortly after, Elite agreed to pay Turquoise $39,953 in return for Turquoise recording a deed releasing its 50% interest in the property. Elite, however, indicated it was paying under protest and intended to litigate.

¶7        In February 2022, Elite and Moldovan filed a complaint against Pioneer, Long, Turquoise, Capital, and several others. As to Pioneer, the complaint alleged "[a] very short time prior to closing . . . Pioneer suddenly refused to close escrow unless Turquoise executed an instrument conveying title in favor of [Elite]" and "Pioneer's failure to proceed shortly prior to closing without consent of Turquoise despite the deficiencies in [the Turquoise Deed] was negligent or a breach of fiduciary duty." The complaint made no other claims against Pioneer.

¶8        Pioneer answered, moved for summary judgment, and requested attorneys' fees under the indemnification clause of the escrow agreement and Arizona Revised Statute ("A.R.S.") § 12-341.01. After considering Elite's and Moldovan's joint response, Pioneer's reply, and oral argument, the court granted Pioneer's motion for summary judgment and awarded Pioneer attorneys' fees and costs. The court found the complaint did not allege Pioneer had breached any term of the purchase contract or escrow agreement, but instead argued, without legal support, "that Pioneer, as escrow agent, should have investigated the circumstances of the

Turquoise deed, talked to Long and Capital Title, and evaluated Moldovan's claim of adverse possession, or requested the buyer [to] close escrow despite the Turquoise deed."

¶9　　　　We have jurisdiction over Elite's and Moldovan's timely appeal under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1), -2101(A).

## DISCUSSION

**I.　　The Superior Court Did Not Err by Granting Summary Judgment in Favor of Pioneer.**

¶10　　　　We review the superior court's grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. *ADP, LLC v. Ariz. Dep't of Revenue*, 254 Ariz. 417, 421 ¶ 5 (App. 2023). Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Once the moving party satisfies its initial burden to show no genuine issue of material fact exists, the nonmoving party bears the burden to present evidence establishing disputed material facts. *Jones v. Respect the Will of the People*, 254 Ariz. 73, 82–83 ¶ 37 (App. 2022).

¶11　　　　Negligence and breach of fiduciary duty claims require plaintiffs to first prove the defendant owed a duty to conform to a certain standard of care. *See BNCCORP, Inc. v. HUB Int'l Ltd.*, 243 Ariz. 1, 8 ¶ 30 (App. 2017) (duty required for negligence claim); *Maxfield v. Martin*, 217 Ariz. 312, 314 ¶ 12 (App. 2007) (escrow agent owes fiduciary duty to parties to the escrow agreement). The existence of a duty is a question of law that we review de novo. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564 ¶ 7 (2018).

¶12　　　　An escrow agent's duties to principals arise from the terms of their agreements. *Tucson Unified Sch. Dist. v. Chicago Title Ins. Co. of Cal.*, 167 Ariz. 114, 116 (App. 1991). In addition to any duties specified under terms of their contracts, agents owe two implicit duties to principals by virtue of the escrow relationship: (1) "to comply strictly with the terms of the escrow agreement"; and (2) "to disclose facts that a reasonable escrow agent would perceive as evidence of fraud being committed on a party to the escrow." *Maxfield*, 217 Ariz. at 314 ¶ 12. Escrow agents must conduct these duties with "scrupulous honesty, skill, and diligence," *id.* (quoting *Berry v. McLeod*, 124 Ariz. 346, 351 (1979)), but need not *investigate* fraud, *see Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 353 (1991)).

### A. Pioneer Strictly Complied with the Purchase Contract and Escrow Agreement.

¶13 Here, the purchase contract and escrow agreement directed Pioneer to: (1) close escrow by a specified date "upon fulfillment of any additional escrow/title requirements"; and (2) "obtain and deliver to Buyer and Seller directly, . . . a Commitment for Title Insurance." The commitment for title insurance required Elite to record a deed from Turquoise to eliminate any purported interest created by the Turquoise Deed. Pioneer complied with these duties by obtaining an offer for title insurance and notifying Elite of the necessary actions to secure insurance and close on time. *See Tucson Unified Sch. Dist.*, 167 Ariz. at 116 (escrow agents' duties are confined to the terms of their agreements).

### B. Pioneer Fulfilled any Disclosure Duty by Notifying Elite of the Turquoise Deed.

¶14 Elite argues that because the Turquoise Deed was "highly questionable, vague, and indefinite," Pioneer should have recognized Elite's sole ownership through adverse possession and also should have reached out to Long to investigate the validity of the deed. Elite contends the Turquoise Deed is "highly questionable, vague, and indefinite" because of: (1) the use of "and" instead of "an"; and (2) a repeated and misplaced phrase: "JO ANN LONG, an unmarried woman as Grantor, and ,". *See supra* ¶ 2. Thus, Elite asserts Pioneer breached its duty because it assumed the Turquoise Deed was valid and required Elite to address it by obtaining a release of interest from Turquoise. Not so.

¶15 Even if an escrow agent suspects fraud, its only duty is to disclose the facts underlying that suspicion; it need not investigate or determine the validity of the fraud. *See Maxfield*, 217 Ariz. at 314 ¶ 12; *Burkons*, 168 Ariz. at 353. Thus, regardless of whether such typos are sufficient indicia of fraud to invoke legal duties on the part of a reasonable escrow agent, that agent's only duty would be to disclose the deed. Pioneer did just that. Therefore, Elite failed to show any evidence of a disputed material fact regarding its breach of fiduciary duties claim.

### C. Pioneer Breached No Other Duties.

¶16 Elite further asserts Pioneer is liable for negligent misrepresentation, a particular type of negligence that requires proof that, in the course of business, the defendant provided false information to the plaintiff and failed to exercise reasonable care in communicating that information. *See Kuehn v. Stanley*, 208 Ariz. 124, 127 ¶ 9 (App. 2004).

¶17 Elite and Moldovan contend Pioneer falsely told Moldovan: "Looks like the property is also owned by Turquoise 5, LLC." Based on that statement, they argue "Pioneer took the position that Turquoise 5 also owned the Property." But whether Pioneer's statement assumed Turquoise's ownership is irrelevant to the purpose of that communication, which was to communicate the Turquoise Deed's existence. Valid or not, the Turquoise Deed's recordation clouded the Property's title. Further, Pioneer's statement was that it "looked like" Turquoise also owned the Property. In other words, Turquoise *appeared* to have an ownership interest. Given the reality of the Turquoise Deed's existence in the Property's chain of title, this statement is not false information. Thus, Elite and Moldovan failed to show any evidence of disputed material facts related to negligent misrepresentation.

¶18 Finally, Elite argues Pioneer "block[ed] the transaction" and "declare[d] the exclusive remedy." It did neither. After receiving Pioneer's email about the Turquoise Deed, Elite had nearly two weeks before the original closing date to investigate the deed, pursue its adverse possession claim, and/or renegotiate with the buyer. *See, e.g.*, A.R.S. § 33-420(B) ("The owner or beneficial title holder of the real property may bring an action . . . to clear title to the real property as provided for in the rules of procedure for special actions."). But none of these actions were Pioneer's to pursue and neither the purchase contract nor the escrow agreement imposed any such duties on it. Moreover, nothing in Pioneer's statements prevented Elite or Moldovan from taking any of these actions—its directions related only to the actions needed to obtain title insurance by the specified closing date and ensure a timely closing. Rather than pursue any other avenues, Elite chose to pay Turquoise and agreed to close escrow ten days before the original closing date.

¶19 On this record, the court did not err by granting Pioneer's motion for summary judgment.

## II. The Superior Court Did Not Abuse Its Discretion by Certifying Its Judgment under Arizona Rule of Civil Procedure 54(b).

¶20 Generally, we review the court's certification under Arizona Rule of Civil Procedure ("Rule") 54(b) for an abuse of discretion. *Kim v. Mansoori*, 214 Ariz. 457, 459 ¶ 6 (App. 2007). The court abuses its discretion when its use of that discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Englert v. Carondelet Health Network*, 199 Ariz. 21, 27 ¶ 14 (App. 2000) (quoting *Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40 (App. 1982)).

**¶21** "[T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay and recites that judgment is entered under Rule 54(b)." Ariz. R. Civ. P. 54(b). A separable claim need not be "entirely distinct from all the other claims in the action" or "arise from a different occurrence or transaction." *See Cont'l Cas. v. Superior Court*, 130 Ariz. 189, 191 (1981). Rather, a claim is separable from the other undetermined claims when "no appellate court would have to decide the same issues more than once even if there are subsequent appeals." *Dabrowski v. Bartlett*, 246 Ariz. 504, 512 ¶ 14 (App. 2019) (quoting *id.*).

**¶22** Elite argues allowing final judgment for Pioneer while Capital continues through litigation could result in "inconsistent and unjust outcomes" and Pioneer faces no hardship or injustice by remaining in the litigation. According to Elite, Capital wrongfully did not disclose the Turquoise Deed whereas Pioneer correctly disclosed the deed but went beyond its duties to cause harm. Elite contends because the escrow companies' actions were "diametrically opposite," judgment in favor of Pioneer "also means by necessary implication" that Capital is liable.

**¶23** But the judgment in Pioneer's favor does not preclude Elite from pursuing its claims against any other defendants, including Capital. The superior court's grant of Pioneer's motion for summary judgment applies only to Pioneer's actions under its agreements with Elite. Even assuming arguendo that Pioneer and Capital took opposite actions and positions, such a fact does not determine whether either company's actions were proper or improper under their respective and distinct agreements. An appeal on claims against Capital would not require us to revisit the same issues presented in this appeal. As discussed above, an escrow company's duties stem directly from its contract with buyers and sellers. *See Maxfield*, 217 Ariz. at 314 ¶ 12.

**¶24** We express no opinion about the virtue of Elite's claims against Capital but conclude nothing in that case, if appealed, would require us to reconsider Pioneer's actions or the contracts between Pioneer and Elite. Therefore, the court did not abuse its discretion in certifying its judgment with 54(b) language.

**III. The Superior Court Did Not Abuse its Discretion by Awarding Pioneer its Attorneys' Fees and Costs.**

    **A. Elite's and Moldovan's Claims Arise out of Contract for the Purposes for A.R.S. § 12-341.01.**

**¶25**       "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). We review the application of A.R.S. § 12-341.01 de novo. *Ray & Lindsay – 11, LLC v. Town of Gilbert*, 252 Ariz. 147, 151 ¶ 22 (App. 2021).

**¶26**       Whether a duty arises out of contract for purposes of A.R.S. § 12-341.01 depends on whether the duty would exist without the contract. *Caruthers v. Underhill*, 230 Ariz. 513, 526 ¶ 57 (App. 2012). Recently, we considered whether negligence and breach of fiduciary duty claims against an escrow company arise out of contract. *See Mago v. Ariz. Escrow & Fin. Corp.*, 1 CA-CV 22-0270, 2023 WL 2704099, *3 ¶¶ 20–23 (Ariz. App. Mar. 30, 2023) (mem. decision). There, we reasoned—and reaffirm now—that A.R.S. § 12-341.01 applies because an escrow company would have had no duty to act toward a buyer with "scrupulous honesty, skill, and diligence" but for an escrow agreement. *Id.* at *3 ¶¶ 22–23. We therefore hold that Elite's and Moldovan's claims arise out of contract for the purposes of A.R.S. § 12-341.01.

**¶27**       Moldovan, however, claims A.R.S. § 12-341.01 is inapplicable because, unlike Elite, he does not have a contractual relationship with Pioneer. But the applicability of A.R.S. § 12-341.01 depends on the characteristics of the claims, not the relationship of the parties. *See Rudinsky v. Harris*, 231 Ariz. 95, 101–02 ¶¶ 27–30 (App. 2012) (applying A.R.S. § 12-341.01 in contract claims asserted by a non-party to the contract). It is irrelevant that Moldovan was not a party to the contract because his claims, like Elite's, would not exist but for the purchase contract and escrow agreement governing Pioneer's escrow duties. Therefore, the court did not err in holding Moldovan liable for Pioneer's fees.

**¶28**       Pioneer also requested its fees under the indemnification clause of the escrow agreement. Unlike fees awarded under A.R.S. § 12-341.01, the court has no discretion to refuse to award fees under a contractual provision awarding attorneys' fees and must enforce it according to its terms. *Premier Consulting & Mgmt. Sols., LLC v. Peace Releaf Ctr. I*, ___ Ariz. ___, ___ ¶ 70, ___ P.3d ___, ___, 2024 WL 413467, at *12 ¶ 70 (App. 2024). But because we find the court properly awarded fees under

A.R.S. § 12-341.01, we need not address whether it was also obligated to do so under the indemnification clause. *See Freeport McMoRan Corp. v. Langley Eden Farms, LLC*, 228 Ariz. 474, 478 ¶ 15 (App. 2011) ("[W]e do not issue advisory opinions or decide unnecessary issues.").

### B. The Court Did Not Abuse its Discretion in Determining the Amount of Attorneys' Fees Awarded.

**¶29** We review the amount of attorneys' fees awarded for an abuse of discretion. *Tucson Ests. Prop. Owners Ass'n v. Jenkins*, 247 Ariz. 475, 478 ¶ 8 (App. 2019). The court abuses its discretion if no evidence supports its conclusions or the reasons it provides are "clearly untenable, legally incorrect, or amount to a denial of justice." *Id.* (quoting *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350 ¶ 17 (App. 2006)). The court cannot award unreasonable fees under a contractual provision, *id.*, and has broad discretion in determining the amount of fees awarded under A.R.S. § 12-341.01(A), *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562 ¶ 39 (App. 2014).

**¶30** The fee application must indicate the date, attorney, and time spent for each legal service provided. *Cooke v. Grebe*, 245 Ariz. 367, 370 ¶ 11 (App. 2018). The description of the service provided need only "contain sufficient detail so as to enable the court to assess the reasonableness of the time incurred." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 266 ¶ 23 (App. 2004). For fee-paying clients, "the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187–88 (1983).

**¶31** After the requesting party submits an affidavit detailing its fees, the opposing party bears the burden to show the fees are improper or unreasonable. *In re Indenture of Tr. Dated January 13, 1964*, 235 Ariz. 40, 52–53 ¶ 47 (App. 2014). But the opposing party "does not meet his burden merely by asserting broad challenges to the application" and must do more than "simply state . . . that the hours claimed are excessive and the rates submitted too high." *Id.* (quoting *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594 (App. 1992) (citation omitted)).

**¶32** Appellants argue the $320-hourly rates for Pioneer's attorneys are too high because they exceed the average rates for contract issues and civil litigation in this jurisdiction: according to Elite, $243 and $298 respectively. Pioneer's attorneys submitted a fee application explaining that the lead attorney has practiced real-estate and business law in Arizona since 1988, and that the supporting attorney had "extensive

experience" in the relevant areas for the case and has practiced law in Arizona since 1980. They assert that they are knowledgeable concerning fee rates normally charged in this jurisdiction and that their own rates are comparable. That Appellants dispute this assertion by invoking their fee software's metrics reduces to an invitation to reweigh this evidence, which we will not do. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 286 ¶ 31 (App. 2019). Instead, we presume that the court fully considered the relevant evidence in awarding fees, even if the order does not detail the relevant evidence considered. *Fuentes v. Fuentes*, 209 Ariz. 51, 55 ¶ 18 (App. 2004). On this record, we see no error in the court's decision to not reduce the hourly rate.

¶33 Next, Appellants contend the number of hours worked was unreasonable because two partner-level attorneys, instead of a partner and associate, worked on the case, doing "overlapping work." But the fee application shows one attorney worked 72.1 hours while the other worked 7.6 hours—all of which he spent conferencing with the lead attorney or revising drafts. Appellants point to no specific entry showing duplicative work between the two attorneys, and we find none. On this record, Appellants have not shown an abuse of discretion.

¶34 Lastly, Appellants argue three sets of entries do not support the fee amount because they include insufficient descriptions, unrelated services, or are vague and ambiguous. As to the first set, Appellants contend some entries fail to differentiate the time spent pertaining to which claim and which plaintiff. But Elite and Moldovan jointly sued Pioneer, made the same claims, and were jointly and severally ordered to pay fees and costs—so it is reasonable that Pioneer's attorneys would not have differentiated time between the two. Without identifying any specific entry, Appellants claim "block-billing . . . appears in many entries." But though block-billing often is not the best of practices, it is not, per se, unreasonable and Appellants do not specify and explain how any particular entry is unreasonable here. *See RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 138 ¶ 21 (App. 2016) ("Although the better practice may be to avoid block-billing when it can be done reasonably, . . . no Arizona authority holds that a court abuses its discretion by awarding fees that have been block-billed.").

¶35 Appellants assert the second set of entries are "inapplicable or unrelated to defending the claims against Pioneer," primarily because some of them pertain to co-defendants' filings. Yet, as Pioneer points out, it would be helpful for Pioneer to understand all of Elite's claims and the other defendants' defenses to respond to the claims against it. Some of the entries highlighted by Elite relate to preparing a joint report and proposed scheduling order, which would necessarily require Pioneer's attorneys

communicate and understand the other defendants' positions. Thus, without more, we cannot say the superior court abused its discretion in awarding time spent reviewing all the filings in the case.

**¶36**  Finally, Appellants argue the third set of entries are "vague or ambiguous" because, for example, some entries reference individuals whose relation to the matter is unknown and attorney conferences do not include details. But Elite fails to identify even one individual whose relation to the matter is unknown and provides no other explanation why the attorney conferences were unreasonable. Without more, Appellants have not shown the superior court—which is in the best position to evaluate the reasonableness of the work required for the case—abused its discretion by granting Pioneer's fee request. *See Parker v. McNeill*, 214 Ariz. 495, 499 ¶ 24 (App. 2007).

## CONCLUSION

**¶37**  We affirm.

**¶38**  Pioneer requests attorneys' fees and costs under the indemnification clause of the terms and conditions of escrow and A.R.S. § 12-341.01(A). We award Pioneer its reasonable attorneys' fees and costs against Elite under the indemnification clause, and in our discretion, against Moldovan under A.R.S. § 12-341.01, contingent upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: TM